UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ZAHRA ASADI, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-1953 (RC) |
| | : | | |
| v. | : | Re Document No.: | 5 |
| | : | | |
| U.S. DEPARTMENT OF STATE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Zahra Asadi, an Iranian citizen, brings this suit to compel Defendants the U.S. Department of State and Antony J. Blinken, in his official capacity as Secretary of State, to adjudicate her visa application, which has now been stuck in administrative processing for approximately twenty-one months. Generally speaking, Plaintiff alleges that Defendants have improperly withheld and unreasonably delayed action on her visa application in violation of the Administrative Procedure Act ("APA") and the Mandamus Act. Defendants have moved to dismiss Plaintiff's complaint. For the reasons set forth below, the motion to dismiss is granted.

### II. BACKGROUND

#### A. Statutory and Regulatory Background

A noncitizen who "is the fiancée . . . of a citizen of the United States . . . and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission" may apply for a "K-1" nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(K)(i). The process to obtain a K-1 visa, however, is "multistep." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 90 (D.D.C. 2020). First, the noncitizen's American fiancé(e) must submit a petition,

known as a Form I-129F, to the Department of Homeland Security (DHS).  *See* 8 U.S.C. § 1184(d)(1); *I-129F, Petition for Alien Fiancé(e)*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-129f [https://perma.cc/S2TD-D7TY].  Second, after DHS approves the petition, it is forwarded to the National Visa Center ("NVC").  *See Visas for Fiancé(e)s of U.S. Citizens*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/family/family-of-us-citizens/visas-for-fiancees-of-us-citizens [https://perma.cc/M3FT-ZLQU].  Finally, the NVC forwards the visa application to a U.S. Embassy or consulate where the noncitizen fiancé(e) intends to apply for a K-1 visa.  *Id.*  A consular officer is then responsible for interviewing the noncitizen fiancé(e), reviewing the application, determining the couple's "bona fide intent to establish a life together," and requesting any appropriate background check.  *Id.*

After a noncitizen has "properly completed and executed" a "visa application" and been interviewed, a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order . . . discontinue granting the visa."  22 C.F.R. § 41.121(a).  "No visa or other documentation shall be issued" if (1) "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."  8 U.S.C. § 1201(g).  In 2002, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002, which, among other things, provided that "[n]o nonimmigrant visa under [8 U.S.C. § 1101(a)(15),]" including K-category visas, "shall be issued to any alien from a country that is a state sponsor of international terrorism unless the Secretary of State determines, in consultation with the Attorney General and the heads of other

appropriate . . . agencies, that such alien does not pose a threat to the safety or national security of the United States." Pub. L. No. 107-173, § 306, 116 Stat. 543, 555 (2002) (codified at 8 U.S.C. § 1735). As of January 19, 1984, the Secretary of State has designated Iran a "state sponsor of international terrorism." State Sponsors of Terrorism, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism [https://perma.cc/Z5MQ-LWR3].

### B. Factual and Procedural Background

Plaintiff, an Iranian citizen, is engaged to Hossein Haddad, a U.S. citizen. Compl. ¶ 8. In September 2021, Mr. Haddad filed an I-129F petition with USCIS on behalf of Plaintiff. *Id.* ¶ 9. USCIS approved the petition on September 20, 2022. *Id.* ¶ 10; *see also* Ex. B, Compl., ECF No. 1-6. Thereafter, Plaintiff submitted a K-1 visa application and, on November 17, 2022, she interviewed with a consular official at the U.S. Embassy in Yerevan, Armenia.[1] *See* Compl. ¶ 12. After the interview, she was informed that her application "had been refused" and would need to undergo further "administrative processing." *Id.* ¶ 13. Since then, Plaintiff has "regularly" inquired "into the status of her" application, but she has yet to receive a final decision or further "explanation or justification." *Id.* ¶¶ 15–16.

On July 6, 2023, just under eight months after her visa application was refused, Plaintiff filed a two-count complaint to compel Defendants to adjudicate her visa application. Plaintiff maintains that Defendants retain jurisdiction over her visa application and further alleges that Defendants' delay is unlawful and unreasonable under the APA and the Mandamus Act. *Id.* ¶¶ 27–44.

---

[1] The complaint states that the interview occurred in November 2023, Compl. ¶ 12, but the Court assumes that is a typographical error given that the complaint was filed in July 2023.

Defendants have moved to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 5. Plaintiff opposes Defendants' motion, *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 6, and Defendants have filed a reply, *see* Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. 9.  Defendants' motion is thus ripe for consideration.

### III.  LEGAL STANDARD

#### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian*, 442 F. Supp. 3d at 91–92; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In determining whether there is jurisdiction, the court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Courts must accept as true all factual allegations in the complaint and must also construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, factual allegations in the complaint "will bear

closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001).  Furthermore, "[t]he Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, No. 23-cv-655, 2024 WL 1175802, at *2 (D.D.C. Mar. 19, 2024); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

### B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor

must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

### IV.  ANALYSIS

Defendants move to dismiss this case under Rules 12(b)(1) and 12(b)(6).  As to the former, they argue that (1) Plaintiff improperly named the Secretary of State as a defendant; (2) Plaintiff's claims are precluded by the consular non-reviewability doctrine; and (3) Plaintiff has not identified a non-discretionary duty that Defendants are required to take.  Alternatively, Defendants argue that the complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to state a plausible claim of unreasonable delay under the APA or Mandamus Act.  The Court will address these arguments in turn.

### A.  Improper Defendant

Defendants first argue that the Secretary of State is an improper defendant because he cannot provide the relief Plaintiff seeks.  *See* Defs.' Mot. at 5–6.  The Court disagrees.

The INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  Relying on this language, Defendants argue that the Secretary of State "cannot favorably adjudicate an application for a visa" and thus "cannot provide the relief requested."  *See* Defs.' Mot. at 5–6.  Courts in this district have repeatedly rejected this argument.  *See, e.g.*, *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *3 (D.D.C. Jan. 30, 2024); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022); *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 89–90 (D.D.C. 2022); *Khoshrou v.*

*Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *4 (D.D.C. Aug. 2, 2023).  Defendants, who do not even acknowledge this body of case law, offer no compelling reason to depart from that conclusion here.

No one disputes that the INA bars the Secretary of State from directing a particular outcome with respect to a visa application.  *See Saavedra Bruno*, 197 F.3d at 1156 ("The powers afforded to consular officers include, in particular, the granting, denying and revoking of immigrant and non-immigrant visas."); *Baan Rao*, 985 F.3d at 1024 ("A consular officer . . . has the authority to grant, deny or revoke any visa.").  "Control over a consular officer's visa determinations," however, "is not the same as control over the timing by which the consular officer considers the applications presented to her."  *Al-Gharawy*, 617 F. Supp. 3d at 10.  Put differently, "nothing in *Baan Rao* or *Saavedra Bruno* precludes the Secretary . . . from directing consular officers 'to conclude matters presented to them' 'within a reasonable time.'"  *Id.* (alterations in original accepted) (quoting 5 U.S.C. § 555(b)); *see also Ramirez*, 594 F. Supp. 3d at 90 ("The provisions and caselaw the government cites stand for a far more limited proposition: that the INA reserves for consular officials the power to evaluate applications on the merits.").  Here, Plaintiff does not challenge a consular officer's adjudication of her visa application and seeks only timely adjudication of that application.  The Secretary of State is thus a properly named defendant.

### B. Consular Non-Reviewability

Defendants next argue that the doctrine of consular non-reviewability bars Plaintiff's claims.  *See* Defs.' Mot. at 14–18.  As its name suggests, the consular non-reviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review."  *Baan Rao*, 985 F.3d at 1024; *see also Saavedra Bruno*, 197 F.3d at 1160 ("[C]onsular visa

determinations are not subject to judicial review."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of the Government to exclude a given alien"). Defendants acknowledge that there are "two narrow" exceptions to this general prohibition, Defs.' Mot. at 15 (quoting *Baan Rao*, 985 F.3d at 1024), but argue that neither apply to "a suit seeking to compel a further decision on a visa application that has already been refused," *id.* Defendants conclude, therefore, that the general bar applies and that the consular official's decision to refuse Plaintiff's visa application "is immune from review." *Id.* at 17.

The Court will assume, favorably to Plaintiff, that the doctrine of consular non-reviewability does not bar review of her claims. As Defendants concede, multiple "judges in this District have held that the [consular non-reviewability] doctrine does not apply in cases where, as here, a consular officer has refused a visa application under" section 221(g). *Id.* at 16. Those courts have explained that "the consular nonreviewability doctrine applies only to *final* decisions"; it "does not bar judicial review of a consular officer's delay when a visa application has been *provisionally refused pending a final decision*." *See Al-Gharawy*, 617 F. Supp. 3d at 11 (emphases added) (collecting cases). Defendants counter that the consular officer's refusal of Plaintiff's visa application *was* a final decision. In other words, they argue that Plaintiff's visa application was not conditionally or provisionally refused, but rather that the consular officer's refusal of her visa was a "final" decision "unless superseded by another decision." Defs.' Mot. at 16–17.

Until recently, the Court would be inclined to disagree with Defendants' characterization. After all, courts have consistently held that where, as here, a visa "application is still undergoing administrative processing," the State Department's "decision is not final" "even where a refusal

8

has been relayed." *See Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *see also Al-Gharawy*, 617 F. Supp. 3d at 17 (concluding that the doctrine of consular non-reviewability did not apply to review of application in "administrative processing" after section 221(g) "refusal"); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 99 (D.D.C. 2020) (same). Put another way, "any [p]laintiff with an application in 'administrative processing' has not yet received a final decision." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016).

The Circuit's recent, unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), casts some doubt on the reasoning in those decisions. In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been "officially refused." *Id.* at *2. That is so even if the consular officer simultaneously chooses to place the application in administrative processing: a "visa application remains officially refused" "[u]nless and until" a consular officer decides to "re-open and re-adjudicate the applicant's case." *Id.* Applied here, *Karimova* thus suggests that once "[a] consular officer reviewed [Plaintiff's] application, interviewed her, and ruled that no visa would be granted," Plaintiff's visa application was "officially refused" notwithstanding its later placement in administrative processing. *See id.* at *4.

The Court need not conclusively determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one. *See id.* at *5 (declining to "decide whether th[e] principle of [consular] nonreviewability applies in this case, which purports to challenge the timing rather than content

9

of a consular visa decision"). That is because, as illustrated below, Plaintiff's claims fail on their merits in any event.

### C. Clear and Non-Discretionary Duty

Defendants' third argument is that Plaintiff's claims are not reviewable because Plaintiff has not identified "a clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application." *See* Defs.' Mot. at 18–25. Their argument is based on the fact that "[t]o state a claim for unreasonable delay under the APA, a plaintiff must allege that the agency failed to take a *discrete agency action* that it is *required to take*." *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (emphases added) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). In other words, "the APA 'allows courts to provide relief for [an agency's] failure to act,'" but only when an agency has failed to take a specific, mandatory action. *Arabzada*, 2024 WL 1175802, at *4 (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14 (D.D.C. 2022)). By a similar token, courts may resort to the "'drastic' remedy" of mandamus only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a *clear duty to act*; and (3) there is no other adequate remedy available to plaintiff." *Babamuradova*, 633 F. Supp. 3d at 19 (emphasis added) (quoting *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)). There is thus a common theme: to proceed under either the APA or the Mandamus Act based on a claim of "an agency's unreasonable delay . . . , a plaintiff must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Arabzada*, 2024 WL 1175802, at *4; *see also Babamuradova*, 633 F. Supp. 3d at 19 ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").

10

Here, too, the Court will assume favorably to Plaintiff that her complaint identifies a clear, non-discretionary duty. This is a generous assumption given that Plaintiff largely relies on section 555(b) of the APA as the source of such a duty. *See* Pl.'s Opp'n at 13–14, 19; *see also* Compl. ¶¶ 32–33, 42. The Circuit recently made clear, however, that section 555(b) does not impose a clear, non-discretionary duty on a "consular officer to re-adjudicate [an] already-refused [visa] application." *Karimova*, 2024 WL 3517852, at *3. That being so, Plaintiff may not rely on "[s]ection 555(b) of the APA as the source of the consular officer's alleged duty to act." *Id.* Again, though, the Court need not scour Plaintiff's complaint and opposition briefing to determine whether she has alleged a clear, non-discretionary duty stemming from another source; her claims fail on the merits.

### D. Unreasonable Delay

Finally, the Court turns to Defendants' argument that Plaintiff's complaint fails to state a plausible claim of unreasonable delay. *See* Defs.' Mot. at 25–33. Simply put, Defendants contend that Plaintiff fails to state a plausible claim because the delay here—roughly twenty-one months—"is not unreasonable as a matter of law." *Id.* at 25.

Plaintiff's claim of unreasonable delay is governed by the APA which, among other things, requires an agency to "proceed to conclude a matter presented to it" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "The 'central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus.'" *Babaei v. U.S. Dep't of State*, No. 23-cv-1244, 2024 WL 1178453, at *5 (D.D.C. Mar. 19, 2024) (quoting *In re Core Commc'ns., Inc.*, 531 F. 3d 849, 855 (D.C. Cir. 2008)). Courts in this circuit consider six factors (the so-called "*TRAC* factors") when evaluating unreasonable-delay claims:

11

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (cleaned up).

Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Courts use the *TRAC* factors to assess claims of unreasonable delay under both the Mandamus Act and the APA. *See S. Utah Wilderness All.*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Applying the *TRAC* factors to the present case, the Court finds that Plaintiff's complaint fails to state a plausible claim of unreasonable agency delay.

### 1. *TRAC* Factors 1 and 2

The first and second *TRAC* factors weigh in Defendants' favor. Generally, the first *TRAC* factor is the "most important" and carries the most weight. *See In re Core Commc'ns*, 531 F. 3d at 855. Courts typically consider the first and second factors together, however, as both analyze whether there is "sufficient rhyme and reason to explain the [g]overnment's response time." *Dastagir v. Blinken,* 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (cleaned up); *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

12

Here, Plaintiff's visa application has been delayed for approximately twenty-one months.[2] "[N]o statutory or regulatory timeline exists within which the State Department or a consular office must re-adjudicate visa applications." *Barazandeh*, 2024 WL 341166, at *8 (quoting *Isse v. Whitman*, No. 22-cv-3114, 2023 WL 4174357, at *7 (D.D.C. June 26, 2023)). That being so, the Court "'turn[s] to case law as a guide' to determine the reasonableness" of Defendants' delay in processing Plaintiff's visa application. *See Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Id.* (quoting *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable. *See Barazandeh*, 2024 WL 341166, at *8 (collecting cases). And indeed, recently, the D.C. Circuit found that a delay of four-and-one-half years was not unreasonable. *See Da Costa*, 80 F.4th at 342. Here, given the circumstances, Defendants' delay of approximately twenty-one months is not unreasonable.

---

[2] Courts calculate delays in visa processing using the period between "the last [g]overnment action" and the issuance of the opinion. *See, e.g.*, *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021) (analyzing a seventeen-month delay between "the last [g]overnment action" and the opinion's issuance); *Eljalabi v. Blinken*, No. 21-cv-1730, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (analyzing a twenty-two-month delay between NVC's last action and the opinion's issuance). The last clear government action occurred on November 17, 2022, when the consular officer refused Plaintiff's visa application. *See* Pl.'s Opp'n at 1–2. Therefore, the period the Court will use to analyze the delay in the instant case is the roughly twenty-one-month span between the consular officer's refusal and the issuance of this Opinion.

### 2. *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors tilt in Plaintiff's favor. Those factors evaluate whether human health and welfare are at stake and if there are interests that would be prejudiced by the visa processing delay. *See TRAC*, 750 F.2d at 80.

Plaintiff alleges that delayed adjudication of her visa application has caused her and her fiancé "significant, ongoing harm" because they have been suspended in "legal limbo" and are unable "to start their lives together as a couple in the United States." Compl. ¶ 17. A plaintiff's "'prolonged and indefinite separation' from her fiancé" constitutes a risk to human health and welfare. *Bagherian*, 442 F. Supp. 3d at 95 (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020)); *see also Barazandeh*, 2024 WL 341166, at *8 ("Prolonged separation from a spouse or immediate family member may be considered a risk to human health and welfare."). Defendants do not contest that proposition. Instead, they argue that prioritizing Plaintiff's visa application "will simply benefit a certain noncitizen to the detriment of others who may have experienced the same or worse impacts from a delay" because resources would have to be directed away "from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the Department's prioritization decisions and place Plaintiff at the front of the line." Defs.' Mot. at 32. True as that may be, these arguments are more appropriately directed at the fourth *TRAC* factor. Plaintiff's allegations of harm due to her separation from her fiancé are sufficient for *TRAC* factors three and five to weigh in her favor.

### 3. *TRAC* Factor 4

The Court next considers the fourth *TRAC* factor—a factor which carries substantial weight. *See Da Costa*, 80 F.4th at 340, 343. The fourth factor "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* at 343

14

(quoting *TRAC*, 750 F.2d at 80).  Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space and produce[] no net gain." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).  In fact, the D.C. Circuit "has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100) (alterations and quotations omitted).

   The Circuit's recent decision in *Da Costa* aptly illustrates these principles.  There, the plaintiffs sought an order compelling USCIS to adjudicate their visa applications within fourteen days, to process any additional requested information within seven days, and to forward any approved applications to the NVC for processing within three days.  *See Da Costa*, 80 F.4th at 344.  In finding that the fourth *TRAC* factor weighed against the plaintiffs, the Circuit explained that the relief the plaintiffs sought was, at bottom, an order that would move their visa petitions "ahead of longer-pending petitions." *Id.* at 343.  The court looked unfavorably on such a request in large part because "moving [the] [p]laintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog." *Id.*  The court also emphasized that, although "judicial intervention could assist [the plaintiffs], it would likely impose offsetting burdens on equally worthy" applicants that were "equally wronged by the agency's delay." *Id.* at 344 (quoting *In re Barr Lab'ys.*, 930 F.2d at 73).  The judges concluded, therefore, that "the effect that [the plaintiffs'] requested relief would have on the queue of petitioners waiting ahead of the [p]laintiffs, weighs against judicial intervention to expedite adjudication of [p]laintiffs' petitions." *Id.*

15

The same is true here.  Compelling agency action on Plaintiff's visa application would "impose offsetting burdens on equally worthy" applicants by effectively putting Plaintiff "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain." *In re Barr Lab'ys.*, 930 F.2d at 73, 75.  Put slightly differently, granting Plaintiff's requested relief would "necessarily come at the expense of" applicants who, like Plaintiff, have likely also been waiting for months or years for their visas to be adjudicated.  *See Da Costa*, 80 F.4th at 340 (internal quotation marks omitted) (quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).  Moreover, granting Plaintiff her requested relief would require the State Department to "reorder[] [its] priorities" in a case where the "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way."  *In re Barr Lab'ys.*, 930 F.2d at 76.  This, the D.C. Circuit has admonished, is something that courts should not do.  *See id.*  For all of these reasons, the Court finds that the fourth *TRAC* factor weighs in Defendants' favor.

### 4.  *TRAC* Factor 6

The sixth *TRAC* factor, on the other hand, does not weigh in either party's favor.  This factor requires courts to "determine whether the agency has acted in bad faith in delaying action."  *See Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).  Plaintiff does "not allege[] any impropriety" here.  Pl.'s Opp'n at 19.  The sixth factor is thus neutral.  *See Fakhimi*, 2023 WL 6976073, at *11; *see also Da Costa*, 80 F.4th at 345–46.

### 5.  Weighing the *TRAC* Factors

Taking all six *TRAC* factors together, the Court concludes that Plaintiff has not stated a claim for unreasonable delay under the APA or the Mandamus Act.  The relatively minimal twenty-one-month delay, prior case law, and the fact that granting Plaintiff the relief she seeks

would come at the expense of other similarly-situated applicants that have waited as long (if not longer) for their applications to be adjudicated all contribute to the conclusion that the delay Plaintiff has experienced has not been unreasonable.  While *TRAC* factors three and five do weigh somewhat in Plaintiff's favor, a holistic review of the factors does not allow these two factors to eclipse the rest.  In this situation, "the government's interests in balancing its own priorities" outweigh the individual harm done to Plaintiff as she awaits a final decision. *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96).

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 15, 2024                                                                                RUDOLPH CONTRERAS
                                                                                                                         United States District Judge